UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | |
| MARIO K. JOHNSON | NO. 7-17-SDD-EWD |

**RULING**

This matter is before the Court on a *Motion to Modify Prison Sentence Pursuant to 18 U.S.C. § 3582(c)* filed by Defendant, Mario K. Johnson ("Johnson").[1] The Government opposes this motion.[2] For the following reasons, the motion is denied.

## I. BACKGROUND

On February 1, 2007, Johnson was charged via indictment with one count of distribution of 5 grams or more of crack cocaine, a Schedule II substance, in violation of Title 21, U.S.C. § 841(a)(1).[3] On May 29, 2007, Johnson pled guilty.[4] On October 8, 2008, Johnson was sentenced to serve 210 months' imprisonment, which was ordered to run consecutively to any previous state or federal sentence.[5] Johnson is housed at FCI Yazoo City Low, located in Yazoo City, Mississippi ("Yazoo City Low").[6] Johnson is scheduled to be released from Bureau of Prisons' ("BOP') custody on September 6, 2025.[7]

On March 3, 2010, Johnson filed a *Motion to Vacate*.[8] At the time, Johnson was

---

[1] R. Doc. 102.
[2] R. Doc. 103.
[3] R. Doc. 1.
[4] R. Doc. 103.
[5] R. Doc. 38.
[6] R. Doc. 102-1, p. 14.
[7] R. Doc. 102-1, p. 14; *See* BOP Inmate Locator, https://www.bop.gov/inmateloc/.
[8] R. Doc. 52.

serving a twenty-year Louisiana state court conviction in Kinder Louisiana at Allen Correctional Center. His *Motion to Vacate* requested that his federal sentence be modified to run concurrently with his Louisiana state court conviction. The Court denied Johnson's motion on March 8, 2010, noting that Johnson had two prior felony drug convictions in the state of Louisiana, both occurring in a short period of time, which justified the imposition of a consecutive sentence under USSG § 4B1.1.[9] On May 22, 2014, Johnson filed a *Motion to Run Sentence Concurrent*, again asking the Court to modify his sentence.[10] The Court denied the motion, finding that the original sentence adequately reflected the seriousness of Johnson's crimes.[11]

On February 4, 2019, Johnson filed a *Motion for Reduction of Sentence Pursuant to Title IV, Section 404 of the "First Step Act" of 2018*.[12] The Court granted Johnson's motion on November 14, 2019, reducing his original term of imprisonment from 210 months to 151 months and reducing his original term of supervised release from 5 years to 3 years. All other terms of the original sentence were undisturbed, including the order that Johnson's federal sentence run consecutive to his state court conviction.[13]

On May 5, 2020, Johnson wrote a letter to the warden of Yazoo City Low requesting that the warden file a motion on his behalf for a sentence reduction pursuant to 18 U.S.C. §3582 (c)(1)(A).[14] Johnson filed the instant motion on July 21, 2020 contending that thirty days passed without a response from the warden.[15] The Government filed an opposition to Johnson's motion on July 30, 2020 conceding that

---

[9] R. Doc. 53.
[10] R. Doc. 55.
[11] R. Doc. 60.
[12] R. Doc. 91.
[13] R. Doc. 97.
[14] R. Doc. 102-1, p. 2-12.
[15] R. Doc. 102, p. 1-2.

Johnson has exhausted his administrative remedies.[16]

## II. ARGUMENTS

Johnson moves this Court pursuant to 18 USC § 3582(c) for a reduction of his sentence to time served for extraordinary and compelling reasons. Johnson makes two arguments that his circumstances qualify for extraordinary and compelling reasons: (1) he suffers from hypertension and is at increased risk of death for COVID-19; and (2) his federal sentence should not have been consecutive to his state felony drug convictions.[17]

### A. Hypertension

Johnson is 39 years old and has a history of hypertension for which he takes medication.[18] He contends that the CDC has recognized that hypertension places him in a greater risk of contracting COVID-19 and contends that if he contracts COVID-19 there is a greater risk of severity of the illness. Johnson argues that Yazoo City Low has had 18 inmates and 5 staff members contract COVID-19, with one inmate death.[19] Johnson notes that he is housed in an open dorm setting and is likely being exposed to asymptomatic carriers of COVID-19 from inmates that frequently cycle in and out of the facility.[20]

The Government opposes Johnson's request. Specifically, the Government contends that the mere existence of COVID-19 is not a basis for sentence reduction and that Johnson's hypertension is not a "serious medical condition" that meets the standard

---

[16] R. Doc. 103 ("If the Court does not issue a ruling before August 21, 2020, there will be no doubt that Johnson's administrative remedies have been exhausted.").
[17] R. Doc. 102, p. 8.
[18] R. Doc. 102-1, p. 46, 48.
[19] R. Doc. 102, p. 8.
[20] A medical note attached to Johnson's motion states that he was quarantined as of April 29, 2020 due to contact with a confirmed case of COVID-19, R. Doc. 102-1, p. 48.

of extraordinary and compelling in the Sentencing Commission's policy statement.[21] The Government further argues that "BOP is eminently qualified to address the threat posed by the pandemic...," providing the Court with citations to publicly available resources on BOP's COVID-19 Action Plan.[22]

In reply, Johnson argues that the Government's contention that Yazoo City Low has vigorously responded to the COVID-19 crisis is couched in "sweeping generalities" and that the BOP has not "enjoyed any success against COVID-19."[23] Johnson argues that the prison environment inherently makes him more susceptible to infection, listing prison conditions, including: challenges with social distancing, decreased opportunity for hand washing, and lack of access to hand sanitizer.[24] Johnson also cites cases that discuss the conditions at Yazoo City Low and others where compassionate release has been granted. Furthermore, Johnson argues that this Court should not follow its previous conclusions in *United States v. Clark*[25] and *United States v. Alexander*,[26] where we held that hypertension is not a "serious medical condition" because those cases were decided before the Center for Disease Control revised its list of risk factors.[27]

### B. Consecutive Sentence

Johnson acknowledges that he was arrested and charged with three separate felonies in 2006 in the 21st Judicial District Court for the Parish of Livingston for possession with the intent to distribute a Schedule II controlled substance.[28] The three

---

[21] R. Doc. 103, pp. 10, 11-12.
[22] R. Doc. 103, p. 3.
[23] R. Doc. 106., p. 106.
[24] R. Doc. 106, pp. 3-4.
[25] 451 F. Supp. 3d 651, (M.D. La. Apr. 1, 2020).
[26] 2020 WL 2468773, (M.D. La. May 13, 2020).
[27] R. Doc. 106, p. 9.
[28] R. Doc. 102, p. 2-3.

charges at the 21st Judicial District Court for the Parish of Livingston resulted in three, twenty-year sentences, which were ordered to run concurrently. In between Johnson's arrest for his second and third state court charge, he sold 12.7 grams of crack cocaine to an undercover agent and was indicted at the Middle District of Louisiana on February 1, 2007 on one count of distribution of 5 grams or more of crack cocaine, a Schedule II substance.[29] As noted above, the federal charge resulted in a sentence of 210 months, ordered to run consecutively to his state court sentence, which was later reduced to 151 months pursuant to the First Step Act.

Johnson argues that his consecutive federal sentence resulted in combined state and federal prison time that constitutes a "gross" sentencing disparity with other similarly situated defendants.[30] Johnson argues that if his drug offenses all been prosecuted in federal court, he would have already been released from prison.[31] He also contends that his sentence exceeds both the average and the mean sentence of black male drug trafficking defendants in federal court in Louisiana during years 2015-2019.[32] Johnson argues that 18 USC § 3582(c) grants the Court the authority to reduce his sentence in order to correct a sentence disparity, citing the Southern District of Texas opinion in *United States v. Cantu*.[33] Johnson urges the Court to grant him compassionate release because he has a low security score, obtained his GED, participated in the Living Sober Program, completed a drug treatment program, developed his faith, has taken classes and acquired job skills.[34]

---

[29] R. Doc. 102, p. 2-3.
[30] R. Doc. 102, p. 1.
[31] R. Doc. 102, p. 5.
[32] R. Doc. 102, p. 19.
[33] *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); R. Doc. 102, p. 23.
[34] R. Doc. 102, p. 7-8.

The Government opposes Johnson's request for a sentence reduction and disagrees that his perceived sentence disparity qualifies as extraordinary and compelling reasons under 18 USC § 3582(c). The Government argues that the First Step Act did not provide the courts with additional discretion outside the enumerated reasons for compassionate release found in policy statement by the Sentencing Commission, citing the Southern District of Georgia opinion in *United States v. Willingham*.[35] Instead, the Government argues, the First Step Act merely resulted in a procedural change which affords inmates the ability to petition the federal courts for review of a request for compassionate release.[36]

## III. LAW AND ANALYSIS

28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.

The Sentencing Guidelines policy statement appears at § 1B1.13 and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Additionally, in application note 1 to the policy statement, the Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release. The note provides as follows:

---

[35] 2019 WL 6733028, (S.D. Ga. Dec. 10. 2019).
[36] R. Doc. 103, p. 6-9.

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). **A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required**. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The Defendant is—

   (I) suffering from a serious physical or medical condition,
   (II) suffering from a serious functional or cognitive impairment, or
   (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

   (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
   (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

 (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Generally, the defendant has the burden to show circumstances meeting the test for compassionate release.[37]

In *United States v. Clark*,[38] this Court held that high blood pressure was not a "serious physical or medical condition." The Court explained in *Clark* that there was "no allegation or evidence that [this] rather common condition[ ] [was] not adequately controlled by medications which [petitioner] concedes he takes."[39] Further, by petitioner's "own allegations, [his] medical conditions [were] controlled by medication ... which the BOP has made available to him."[40] This Court reached the same conclusion under similar facts in *United States v. Alexander*,[41] where the defendant was 46 years old with hypertension,[42] and in *United States v. Boulton*, where the defendant was 50 years old with hypertension.[43]

Similarly, in *United States v. Gileno*,[44] upon which *Clark* relied, the petitioner argued that he was "at a heighted risk due to 'his compromised medical condition,' ... referencing his 'high blood pressure, high cholesterol, asthma, and allergies."[45] After concluding that the petitioner had failed to exhaust his administrative remedies (and thus

---

[37] *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (emphasis added).
[38] *United States v. Clark*, 451 F. Supp. 3d 651, 656-657 (M.D. La. Apr. 1, 2020).
[39] *Id.* at 656 n.17.
[40] *Id.*
[41] 2020 WL 2468773, (M.D. La. May 13, 2020).
[42] The Court in *Alexander* determined that the defendant presented no evidence that he in fact had hypertension, but even if he did have the condition it would not be a "serious physical or medical condition" under U.S.S.G. § 1B1.13. *Id.* at *7.
[43] *United States v. Boutlon*, 2020 WL 6146489, (M.D. La. Oct. 20, 2020).
[44] *United States v. Gileno*, 448 F. Supp. 3d 183, (D. Conn. Mar. 19, 2020).
[45] *Id.* at 186.

that "the Court cannot consider his motion to modify his sentence"), the court explained, "Mr. Gileno has not shown that his medical issues, which remain largely the same as when he was sentenced, 'substantially diminish [his] ability ... to provide self-care' within the correctional facility."[46] The court also found that the defendant failed to show that the BOP's plan to address COVID-19 was inadequate:

> With regard to the COVID-19 pandemic, Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno ... But at this time the Court cannot assume that the Bureau of Prisons will be unable to manage the outbreak or adequately treat Mr. Gileno should it emerge at his correctional facility while he is still incarcerated.[47]

Additionally, "the *fear* of contracting a communicable disease" does not "warrant[ ] a sentence modification."[48] Furthermore, Johnson fails to show that concerns about the spread of COVID-19, without other factors to consider in his particular case, present extraordinary and compelling reasons that warrant modification of his sentence and immediate release from custody pursuant to § 3582(c)(1)(A), which requires that a reduction of sentence under this provision be "consistent with applicable policy statements issued by the Sentencing Commission." General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.[49]

---

[46] *Id.* at 188 (citation omitted).
[47] *Id.*
[48] *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. Apr. 1, 2020) (emphasis in original), quoting *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1089 (N.D. Cal. Mar. 25, 2020).
[49] *Clark*, 451 F. Supp. 3d 651 at 657 (quoting *Eberhart*, 448 F. Supp. 3d 1086 at 1089).

Johnson urges the Court to depart from our holdings in *Clark* and *Alexander* and grant him compassionate release, citing CDC guidance stating that hypertension might be a possible risk factor for severe illness from COVID-19.[50] Johnson argues that the Court is not limited in its authority to grant compassionate release only to inmates who suffer from conditions on the CDC list of risk factors that are certain to cause severe illness from COVID-19. The Court acknowledges that, if an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons" where such a condition is found to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19.[51] *See* U.S.S.G. § 1B1.13, comment. (n.1(A)(ii)(I)).

However, the Court disagrees with Johnson that his hypertension satisfies the standard of "extraordinary and compelling reason." Like the defendant in *Clark*, the medical notes attached to Johnson's motion indicate that his hypertension is well controlled by medication.[52] Johnson has not alleged that his hypertension has caused his medical condition to deteriorate or that his condition has worsened in prison.[53] Furthermore, the latest information from the BOP on Yazoo City Low indicates that zero inmates and only five staff members are COVID-19 positive.[54]

---

[50] R. Doc. p. 106.
[51] *See* U.S.S.G. § 1B1.13, comment. (n.1(A)(ii)(I)).
[52] R. Doc. 102-1, pp. 46, 52.
[53] *See e.g., United States v. Koons*, 2020 WL 1940570 (W.D. La. Apr. 21, 2020); *United States v. Mazur*, 2020 WL 2113613 (E.D. La. May 4, 2020) ("Additionally, finding that Mazur's medical conditions combined with the threat of COVID-19 is an extraordinary and compelling reason would potentially have far-reaching implications, as to any defendant currently incarcerated at Mazur's facility with a serious, albeit non-terminal, compromised immune system.").
[54] https://www.bop.gov/coronavirus/

The cases cited by Johnson where courts granted compassionate release are distinguishable because the inmates all had multiple comorbidities: *United States v. Malone*,[55] (inmate at FCI Butner with liver disease, eye cancer, type II diabetes, and compression of the spine and was being denied cancer treatment due to his provider's COVID-19 guidelines prohibiting access to inmates); *United States v. Greene*,[56] (inmate at Yazoo City Low with latent tuberculosis, scarring on his right lung, and stage 2 chronic kidney disease); *United States v. Smith*,[57] (inmate at Yazoo City Low with sleep apnea, hypertension, morbid obesity, and type II diabetes).[58]

Johnson has failed to demonstrate that his hypertension meets the standard for extraordinary and compelling reasons due to a serious medical condition for a sentence modification, and there is no evidence before the Court that the BOP's plan to address the pandemic will not adequately protect inmates.

Next, Johnson maintains that the Court has authority to decide there are extraordinary and compelling reasons beyond the specific criteria laid out in § 1B1.13. Particularly, Johnson contends that his consecutive state and federal sentences, which he considers to be a sentencing disparity, constitutes extraordinary and compelling reasons for compassionate release. There is a split of authority on this issue.[59] Ultimately,

---

[55] 2020 WL 3065905, (W.D. La. June 9, 2020).
[56] 2020 WL 4581712, (E.D. Mich. Aug. 10, 2020).
[57] 2020 WL 3027197, (C.D. Ill. June 5, 2020).
[58] Johnson also cites two other cases where district courts have granted compassionate release to inmates with hypertension, *United States v. Robinson*, 2020 WL 4041436, (E.D. Va. July 17, 2020) and *United States v. Salvagno*, 456 F. Supp. 3d 420, (N.D.N.Y. Apr. 23, 2020). The Court has reviewed these cases, and they are either distinguishable or inconsistent with previous opinions of this Court.
[59] *See United States v. Willingham*, No. CR 113-010, 2019 WL 6733028, at *1–*2 (S.D. Ga. Dec. 10, 2019) (collecting cases on both sides of this issue but ultimately holding that "this Court will follow the policy statement in U.S.S.G. § 1B1.13 and deny Willingham's motion because she does not meet the specific examples of extraordinary and compelling reasons and the Director of the BOP has not determined that circumstances outside of these examples exist to afford her relief.").

this Court need not resolve this split. Even if the Court were empowered to go beyond the specific criteria in § 1B1.13, the Fifth Circuit in *United States v. Chambliss* held, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)."[60]

Here, even if the Petitioner had demonstrated an extraordinary and compelling reason, the Court would exercise its discretion and deny the requested relief. The Court has considered the factors highlighted by the Petitioner: his age, potential health risks, security score, and rehabilitative efforts, and find that they are neutral. While Johnson is a relatively young man who represents as having a low security score and having engaged in considerable rehabilitative efforts, as explained above, his potential health risks are not as severe as he asserts under *Clark* and *Gileno*, and his age puts him outside the high risk groups over 70 who are particularly susceptible to COVID-19.

Further, while the Court must consider the Attorney General factors, *Chambliss* makes clear that it must also consider the § 3553(a) factors (to the extent applicable), and these weigh against compassionate release. The Court engaged in careful consideration of the circumstances when it ordered Johnson's sentence to run consecutively on October 8, 2008. Subsequently, this Court has on two previous occasions considered Johnson's same arguments that his state and federal sentences should run concurrently.[61] As reflected in those rulings, the nature and circumstances of the offense were serious, warranting the sentence imposed. As mentioned above, Johnson was arrested and convicted of multiple felony offenses for possession with the intent to distribute a Schedule II controlled substance during a very short time period. The

---

[60] *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).
[61] R. Doc. 53, 60.

Court also finds that the sentence imposed should reflect the seriousness of the offense and afford adequate deterrence; this is the reason why the Court imposed a consecutive federal sentence, and the Court believes that granting Johnson compassionate relief would undermine those goals.

## IV. CONCLUSION

Johnson failed to present sufficient evidence to establish that there is an extraordinary and compelling reason for reducing his sentence, as he failed to satisfy any of the criteria in § 1B1.13. Finally, even if Johnson had shown an extraordinary and compelling reason, the Court would exercise its discretion to decline the motion. Accordingly,

**IT IS HEREBY ORDERED** that the *Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A),* (R. Doc. 102), filed by Defendant, Mario Johnson is **DENIED**.

Signed in Baton Rouge, Louisiana on January 26, 2021.

_____
**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**